IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 707,<br><br>    Plaintiff,<br><br>  v.<br><br>CONNEX-ATC,<br><br>    Defendant.<br>_____/ | No. C-06-3757 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; STAYING ACTION PENDING ARBITRATION; VACATING HEARING**<br><br>(Docket No. 11) |

    Before the Court is the motion filed August 21, 2006 by defendant Connex-ATC ("Connex") to dismiss the instant action for lack of subject matter jurisdiction. Plaintiff Service Employees International Union, Local 707, ("SEIU"), has filed opposition to the motion; Connex has not filed a reply. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for resolution without oral argument, see Civil L.R. 7-1(b), hereby VACATES the October 20, 2006 hearing, and rules as follows.

**BACKGROUND**

    SEIU alleges that during the period July 1, 2002 through June 30, 2006, it was a party to a collective bargaining agreement ("CBA") with the Sonoma Division of ATC/Vancom of California, L.P. ("ATC Vancom"). (See Compl. ¶ 2.) SEIU further alleges

1  Connex is the successor employer to ATC/Vancom and, consequently, Connex is now a
2  party to the CBA.  (See id. ¶ 3.)
3       Article 18 of the CBA sets forth a multi-step grievance and arbitration procedure
4  applicable to "all questions arising between the Company and the Union regarding the
5  interpretation of [the CBA], including disciplinary action and discharge."  (See id. Ex. 1,
6  Article 18.A at 27.)  Article 18 further provides: "Time limits specified in each step of the
7  procedure shall be strictly observed and may only be extended by mutual agreement of the
8  parties in writing.  Failure of either party to observe a time limit shall terminate the
9  grievance process and result in an automatic decision in favor of the timely party."  (See id.
10 Art. 18.C at 28.)
11      On September 28, 2005, SEIU alleges, Erik LePage ("LePage") submitted a first-
12 step grievance concerning whether he had a right under Article 14 of the CBA, as a part-
13 time employee, to accrue paid time off.  (See Compl. ¶ 8 and Ex. 2.)  SEIU further alleges
14 that Lepage, on October 16, 2005, having received an "unsatisfactory response" at step
15 one, submitted his grievance pursuant to step two of the grievance procedure.  (See id. ¶ 9
16 and Ex. 3.)  Thereafter, SEIU alleges, on October 21, 2005, LePage, having "not received a
17 satisfactory response at step two, . . . advanced the grievance to step three by filing a copy
18 of it and the step one grievance with Kent Hinton, the General Manager."  (See id. ¶ 10 and
19 Ex. 4.)
20      Article 18 of the CBA provides, at step three of the grievance procedure, that
21 "[w]ithin five (5) days of the receipt of the appeal the General Manager or designee shall
22 meet with the employee to discuss the grievance" and "shall give a decision in writing within
23 five (5) days of the meeting."  (See id. Ex. 1, Art. 18.B.3 at 28.)  SEIU alleges the General
24 Manager failed to conduct a meeting to discuss the grievance or to render a timely decision
25 in writing.  (See id. ¶ 13.)
26      According to SEIU, it notified the General Manager in writing, on November 2, 2005,
27 that because the General Manager had violated the time limits set forth in Article 18.B.3 of
28 the CBA, "the grievant must be awarded his requested resolution."  (See id. ¶ 15 and Ex.

5.)  SEIU contends that "the failure of the Defendant to observe the five-day limit set forth in Article 18, Section B, 3, and conduct a meeting, creates an automatic decision in favor of the Grievant pursuant to Article 18, Section C."[1]  (See id. ¶ 15.)  SEIU alleges it has received no response to its November 2, 2005 request.  (See id.)

The instant action "for declaratory relief and to confirm grievance remedy," pursuant to § 301 of the Labor Management Relations Act (29 U.S.C. § 185), was filed June 14, 2006.  SEIU seeks a declaration that Connex failed to observe the time limit for responding to LePage's grievance and that, consequently, there was an "automatic decision in favor of the Grievant," pursuant to Article 18.C of the CBA.  (See id., Prayer for Relief ¶ 1.)  Additionally, SEIU seeks an order compelling Connex "to take all steps necessary to implement the requested solution of the grievance as follows: 'PTO (paid time off) shall accrue for all employees, including [Grievant] and other part-time employees, regardless of their job classification, with no exemptions, exclusions, exceptions and/or conditions for part-time and full-time employees who completed their 90-day probationary period.'" (See id., Prayer for Relief ¶ 2.)

## DISCUSSION

Connex moves to dismiss the instant action for lack of subject matter jurisdiction, on the ground that the parties contracted to resolve their disputes exclusively through arbitration.  When an action involves an issue that the parties have agreed is subject to arbitration, however, the district court "is not deprived of jurisdiction altogether."  See Nicholson v. Labor Ready, Inc., 1997 WL 294303 (N.D. Cal. 1997) (citing Evans v. Hudson Coal Co., 165 F.2d 970, 970 (3d Cir. 1948)).  Rather, pursuant to § 4 of the Federal Arbitration Act ("FAA"), "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  See 9 U.S.C. § 4.  Additionally, pursuant to § 3 of the FAA, the court is required to stay, not dismiss, the action pending

---

[1] Assuming, arguendo, the General Manager had responded to LePage's grievance at step three, the CBA's grievance and arbitration procedure provides for two additional steps: reference to a Board of Adjustment, followed by arbitration.  (See Compl. Ex. 1, Art. 18.C.4 at 28.)

3

arbitration.  See 9 U.S.C. § 3; see also Morris v. Morgan Stanley & Co., 942 F.2d 648, 653-54 (9th Cir. 1991) ("[A]lthough § 3 requires a stay of the trial where a valid arbitration agreement is operative, the section obviously envisages action in a court on a cause of action and does not oust the court's jurisdiction of the action, though the parties have agreed to arbitrate.") (internal quotation, citation, and alterations omitted).  Consequently, Connex is not entitled to dismissal of the instant action.

Although Connex does not expressly move to compel arbitration, the gravamen of Connex's motion is that "the issue of Defendant's alleged procedural default is properly left to the arbitrator to decide." (See Motion at 3:25-26.)  Because SEIU has addressed the merits of Connex's arguments in support of arbitration, the Court will construe the instant motion as a motion to compel arbitration.  See, e.g., Filimex, L.L.C. v. Novoa Investments, L.L.C., 2006 WL 2091661 at *2-3 (D. Ariz. July 17, 2006) (construing motion to dismiss for lack of subject matter jurisdiction as motion to compel arbitration).

The FAA, 9 U.S.C. § 1 et seq., establishes a "federal policy favoring arbitration" and requires federal courts to "rigorously enforce agreements to arbitrate."  See Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) (internal quotations and citations omitted).  Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  See AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) (internal quotation and citation omitted).  Whether there is an agreement to arbitrate is a question for the court rather than the arbitrator, unless the arbitration agreement "clearly and unmistakably" provides otherwise.  See id. at 649.  "[D]ue regard must be given to the federal policy favoring arbitration," and "ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."  See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. University, 489 U.S. 468, 476 (1989).

Here, the parties do not dispute they are bound by the CBA or that the issue raised by LePage's grievance is subject to the grievance and arbitration procedure set forth in Article 18 of the CBA.  The only dispute is with respect to whether the Court or the

arbitrator must decide whether the asserted failure of Connex to timely respond to LePage's grievance results in an "automatic decision" in LePage's favor.

Relying on John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1963), Connex argues that "once it is determined that the parties intended to arbitrate the particular dispute, all other issues, whether procedural or substantive, arising out of that dispute are left to the arbitrator." (See Mot. at 5:15-18); John Wiley, 376 U.S. at 557 ("Once it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."). In John Wiley, the employer argued it had no duty to arbitrate because, inter alia, the union had failed to comply with the CBA's requirement that notice of a grievance be provided within a specified time period and the CBA further provided that such failure to comply would "be deemed to be an abandonment of the grievance." See id. at 555-556 and n.11. The Supreme Court held that a party's compliance with such "procedural prerequisites to arbitration" is an issue for the arbitrator, not the court, because such procedural issues are frequently entangled with the merits of the parties' dispute, and because the delay caused by a court's consideration of such issues "may entirely eliminate the prospect of a speedy arbitrated settlement of the dispute, to the disadvantage of the parties . . . and contrary to the aims of national labor policy." See id. at 557-58.

In further support of its argument, Connex cites Retail Delivery Drivers, Driver Salesmen, Produce Workers & Helpers Local 588 v. Servomation Corp., 717 F.2d 475 (9th Cir. 1983), in which the CBA at issue therein provided that where a grievance was not resolved at the first step of the grievance procedure, either party could submit the matter to an arbitrator upon timely notice to the other party, and where a party failed to provide timely notice, the matter was "deemed to have been settled in favor of the party against whom the grievance" was brought. See id. at 476 and n.1. The Ninth Circuit held the question of whether such notice was timely provided was an issue for the arbitrator, not the court. See id. In rejecting the argument SEIU raises in the instant case, specifically, that the parties

5

1  did not agree to proceed to arbitration unless the time limits were met, the Ninth Circuit held
2  that "when time limitations and other procedural requirements are made an express part of
3  the arbitration agreement, they become part of the bundle of issues the parties consented
4  to have decided by an arbitrator's special interpretative ability." See id. at 478.

5  There is no material difference between the timeliness issues raised in John Wiley
6  and Retail Delivery Drivers and the timeliness issue raised in the instant case. Relying on
7  Vaca v. Sipes, 386 U.S. 171 (1967), SEIU argues that Connex nonetheless is estopped
8  from relying on "unexhausted grievance and arbitration procedures" as a defense to the
9  instant action. In Vaca, the Supreme Court, while observing that an employee may not
10 bring suit against his employer for breach of a CBA without "at least attempt[ing] to exhaust
11 exclusive grievance and arbitration procedures established by the bargaining agreement,"
12 further noted that "[a]n obvious situation in which the employee should not be limited to the
13 exclusive remedial procedures established by the contract occurs when the conduct of the
14 employer amounts to a repudiation of those contractual procedures." See id. at 184-185.
15 Rather, under such circumstances, "the employer is estopped by his own conduct to rely on
16 the unexhausted grievance and arbitration procedures as a defense to the employee's
17 cause of action." See id. at 185.

18 As the Ninth Circuit has held, however, "the issue whether repudiation has occurred
19 must normally be submitted to arbitration when the contract calls for arbitral resolution of
20 questions arising under the collective bargaining agreement." See California Trucking
21 Ass'n v. Brotherhood of Teamsters & Auto Truck Drivers, Local 70, 679 F.2d 1275, 1282
22 (9th Cir. 1982). Although the Ninth Circuit has recognized a limited exception to the above-
23 referenced rule where the asserted act of repudiation occurs directly before the court,
24 see id. at 1282-83, Connex has not sought to repudiate the CBA's grievance and arbitration
25 procedures in its filings herein. Cf. id. (noting union "consistently repudiated the entire
26 collective bargaining agreement by denying throughout the proceedings before the [trial]
27 court that it was bound by the agreement"). Indeed, Connex argues that the instant dispute
28 is governed by said procedures and expressly states it "is ready, willing, and able to

arbitrate LePage's grievance." (See Motion at 3:17-18.)

In sum, both the Supreme Court and the Ninth Circuit have held the issue of compliance with time limits set forth in a CBA's grievance and arbitration procedures is for the arbitrator to decide, and the Ninth Circuit further has held the issue of an employer's repudiation of such procedures likewise is an issue for the arbitrator. Accordingly, the Court finds the issue herein raised by SEIU, specifically, whether, under the CBA, Connex's asserted failure to timely respond to LePage's grievance mandates an "automatic decision" in LePage's favor, is an issue for the arbitrator and not the Court.

## CONCLUSION

For the reasons set forth above, Connex's motion is hereby GRANTED in part and DENIED in part, as follows:.

1. To the extent Connex seeks dismissal of the instant action for lack of subject matter jurisdiction, the motion is hereby DENIED.

2. To the extent Connex seeks to compel arbitration, the motion is hereby GRANTED, and the instant action is hereby STAYED pending arbitration, pursuant to § 3 of the FAA.

This order terminates Docket No. 11.

**IT IS SO ORDERED.**

Dated: October 18, 2006

MAXINE M. CHESNEY
United States District Judge